IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY SUGAMOSTO,

    Plaintiff,

v.                                                       CV 12-0854 WPL/LAM

EMERALD CORRECTIONAL
MANAGEMENT, LLC, and
TONI GARRETT, R.N.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

After Gary Sugamosto filed his First Amended Complaint in this action against Emerald Correctional Management, LLC ("Emerald"), and Toni Garrett (Doc. 12), Emerald filed a second motion to dismiss Sugamosto's Eighth Amendment claim against it (Doc. 15). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge, resolve dispositive matters, and enter a final judgment. (Doc. 6.) Having considered the amended complaint, the filings in this matter, and the relevant law, I find that Sugamosto has properly stated an actionable Eighth Amendment claim against Emerald. Thus, Emerald's motion to dismiss is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this motion is brought under Federal Rule of Civil Procedure 12(b)(6), I will accept all the well-pleaded allegations in Sugamosto's complaint as true, even if doubtful in fact, and construe the allegations in the light most favorable to Sugamosto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555

F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). For purposes of this motion, I will only include facts relevant to Sugamosto's allegations against Emerald, as Emerald does not challenge Sugamosto's allegations against Garrett.[1]

Sugamosto was at all relevant times a prisoner at Lincoln County Detention Center ("LCDC"), a facility operated by Emerald in Carrizozo, New Mexico. (Doc. 12 at 1-2.) When Sugamosto arrived at LCDC, Emerald became aware that he suffered from diabetes and other medical conditions. (*Id.* at 2.) Sugamosto eventually developed an ulcer on one of his big toes, which he showed to Garrett, the head nurse at LCDC. (*Id.*) Sugamosto alleges that Emerald and Garrett knew this to be a serious medical condition. (*Id.*) Upon examining Sugamosto, the doctor provided Emerald and Garrett with a plan for treatment and advised Emerald that Sugamosto was not to be shackled at the feet or legs while his wound was healing, as doing so would have a negative impact on his ulcer. (*Id.* at 2-3.)

Despite the doctor's instructions, Sugamosto continued to be shackled at the feet when he was transported to medical appointments. (*Id.* at 3.) Sugamosto spoke to LCDC's warden, Arthur Anderson, telling him about the doctor's instructions and requesting that his feet not be shackled during transport. (*Id.*) Sugamosto alleges that Anderson possessed the authority to adopt and implement policy at LCDC and that Anderson knew that shackling would cause him further injury. (*Id.* at 3-4.) Nonetheless, Anderson refused to allow Sugamosto to be transported without foot shackles, stating that LCDC shackled all prisoners at the feet during transport and that he would not make an exception in this instance. (*Id.* at 3.)

---

[1] The first motion to dismiss in this action was filed jointly by Emerald and Garrett. (Doc. 4.) However, after I ruled on that motion, Emerald discovered that Garrett is employed by a separate entity. (Doc. 15 at 1 n.1.) Garrett has since filed her answer in this matter (Doc. 19), and the instant motion was filed solely by Emerald.

The continued shackling allegedly caused Sugamosto's condition to seriously worsen and become very painful, as did Garrett's failure to provide medical care consistent with the doctor's orders. (*Id.* at 4.) These circumstances ultimately led to the amputation of Sugamosto's toe. (*Id.*)

Sugamosto filed a complaint against Emerald and Garrett in the Twelfth Judicial District Court of New Mexico pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging Eighth Amendment violations and negligence. (Doc. 1 Ex. 1 at 3-5.) Emerald and Garrett removed the case to this Court (Doc. 1) and filed a motion to dismiss the Eighth Amendment claims shortly thereafter (Doc. 4). I denied that motion with respect to certain allegations against Garrett, but I granted it with respect to all other allegations, including those against Emerald. (Doc. 11.) However, I also granted Sugamosto leave to amend his complaint with respect to the dismissed claims. (*Id.* at 11.) Sugamosto filed his amended complaint two weeks later. (Doc. 12.)

This matter is now before me on Emerald's second motion to dismiss Sugamosto's Eighth Amendment claim against it pursuant to Rule 12(b)(6). (Doc. 15 at 2.)[2] Emerald contends that Sugamosto has failed to sufficiently allege that it is responsible for any constitutional violations against Sugamosto, as he has not pleaded facts showing that it acted pursuant to an official policy. (*Id.*) Sugamosto disputes this, arguing in response that he has properly pleaded facts showing that the harm against him was the result of an act of official policy by Emerald. (Doc. 16.) Emerald filed a reply reiterating its arguments. (Doc. 20.)

### STANDARD OF REVIEW

Rule 12(b)(6) authorizes a court to dismiss a complaint in whole or part for failing to state a claim upon which relief is available. In considering Rule 12(b)(6) motions, a court must

---

[2] As with its first motion to dismiss (Doc. 4), Emerald does not challenge Sugamosto's negligence claim in the instant motion.

3

look within the four corners of the complaint, accept all well-pleaded factual allegations as true, view such allegations in the light most favorable to the nonmoving party, and evaluate whether the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570); *Clark v. State Farm Mut. Auto Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003) (citations omitted). In other words, the court may neither look beyond the complaint nor weigh the evidence. *See Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (citation omitted). To survive a motion to dismiss, then, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief" under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Local municipalities can be held liable for constitutional violations in an action brought under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, municipal liability cannot be premised on a theory of *respondeat superior* or vicarious liability. *See id.* at 690-95; *Simmons v. Uintah Health Care Special Servs. Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) (citations omitted). Rather, to succeed in a § 1983 claim against a municipal entity, a plaintiff must show both (1) that his harm was caused by a constitutional violation, and (2) that the municipal entity caused this violation through its own actions. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1155 (10th Cir. 2001). Private entities acting under color of municipal law, including private correctional management companies such as Emerald, are also subject to these doctrines. *See*

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted); *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1245, 1248-50 (D.N.M. 1998).

Emerald does not appear to challenge whether Sugamosto satisfies the first prong of the *Collins* test by pleading harm caused by a constitutional violation. Instead, Emerald limits its arguments to the second prong of *Collins*, contending that it cannot be held liable for the alleged constitutional violations because Sugamosto has failed to plead sufficient facts that, if taken as true, would establish its responsibility for those violations. Such responsibility may only be established if Sugamosto has pleaded facts showing the existence of a particular custom or policy at LCDC, the requisite state of mind for the underlying constitutional violation, and a direct causal link between the custom or policy and the alleged violation. *See Dodds v. Richardson*, 614 F.3d 1185, 1202, 1204 (10th Cir. 2010) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 405 (1997)). Because Emerald focuses exclusively on the argument that Sugamosto has not shown the existence of an act of official policy (Doc. 15), I do not address the remaining factors discussed in *Dodds*.

Sugamosto alleges that the decision by Anderson, LCDC's warden, to require him to be shackled despite the doctor's instructions constitutes an act of official policy made on Emerald's behalf. (Doc. 12 at 3-4.) A single decision may be interpreted as an act of official policy for purposes of establishing municipal liability under § 1983 if that decision is made by an official with final policymaking authority over the activity in question. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986) (plurality opinion). To determine whether an official has such authority, courts must look to state law. *Id.* at 483; *see also Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (citations and internal quotation marks omitted) (discussing factors for determining policymaker status in the absence of clear statutory language).

5

Sugamosto alleges that Anderson, as warden, possessed the authority to craft official policy at LCDC, and he further alleges that Anderson exercised this authority by requiring him to be shackled despite a doctor's contrary orders. (Doc. 12 at 3.)[3] These alleged facts are well-pleaded, and I must therefore accept them as true. *See Iqbal*, 556 U.S. at 678. Going forward, Sugamosto will bear the burden of establishing that Anderson's position as LCDC's warden did, in fact, give him final policymaking authority with respect to the decision to shackle prisoners at the facility. *Cf. Pembaur*, 475 U.S. at 483 n.12 (noting in dicta that a county sheriff, for example, may serve as an official policymaker for municipal-liability purposes with respect to some actions but not others). However, for purposes of this motion, Sugamosto's allegations allow me to draw a "reasonable inference," *see Iqbal*, 556 U.S. at 678, that Warden Anderson acted as an official policymaker at LCDC and that his decision with respect to shackling Sugamosto thus constituted an act of official policy attributable to Emerald, *see Pembaur*, 475 U.S. at 482-83.

Emerald's arguments to the contrary are insubstantial. Although Emerald contends that Sugamosto has failed to show that Anderson "created the policy that prisoners must be shackled during transport" (Doc. 15 at 6), the complaint, viewed in the light most favorable to Sugamosto, does not speak to or challenge LCDC's general prison policies. Instead, it alleges that Anderson's decision to have him shackled despite medical instructions to the contrary constitutes a single decision by a policymaking official that leaves Emerald liable under § 1983. Further, while Emerald correctly notes that Sugamosto has not shown that Anderson's decision was ratified by a supervising official (Doc. 15 at 6), such a showing is unnecessary since Sugamosto alleges that Anderson himself was responsible for LCDC policy and not subordinate to a policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion).

---

[3] Indeed, a review of the relevant state law reveals that a warden or superintendent is considered to be the "administrative director" of a correctional facility. N.M. STAT. ANN. § 33-1-2.

Finally, in its reply, Emerald cites to caselaw from a sister jurisdiction in an attempt to distinguish between the roles of administrator and policymaker. (Doc. 20 at 2 (citing *Meyers v. Nava*, 518 F. Supp. 2d. 1279, 1286-87 (D. Kan. 2007)).) It may very well be true that Anderson did not actually possess policymaking authority with respect to whether a prisoner should be shackled despite doctor's orders to the contrary. However, at this stage of proceedings, it is not necessary for Sugamosto to have proven that Anderson possessed such authority, and at any rate I would not be able to weigh such evidence in ruling on this motion to dismiss. *See Gossett*, 245 F.3d at 1175. Rather, Sugamosto is only required to have pleaded sufficient facts that, if true, would allow a reasonable inference that this is the case. *See Iqbal*, 556 U.S. at 678. Having reviewed the amended complaint and the relevant law, I conclude that he has done so.

## CONCLUSION

Emerald has not challenged whether Sugamosto properly alleges that a constitutional violation caused him harm. *See Collins*, 503 U.S. at 120. Further, Sugamosto has pleaded sufficient facts alleging an act of official policy on Emerald's behalf, and Emerald has not attacked his complaint on any other grounds. *See id.*; *Dodds*, 614 F.3d at 1202. Accordingly, Sugamosto has properly stated an Eighth Amendment claim against Emerald, and Emerald's second motion to dismiss must therefore be denied.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.